IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:22-cr-106-1 |
| MAINER MEDINA-FELIZ, | | JUDGE WALTER H. RICE |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. #75)

---

Defendant Mainer Medina-Feliz ("Medina-Feliz") and several others were indicted on multiple drug-related charges, pursuant to an Indictment issued by a grand jury in the United States District Court for the Southern District of Ohio on September 28, 2022. Doc. #4. Medina-Feliz's trial is scheduled to begin on March 4, 2024. This matter is currently before the Court on Medina-Feliz's Motion to Suppress Evidence, Doc. #75. He asks the Court to suppress all evidence obtained as the result of the September 1, 2022, search of 405 Cribbs Avenue, Middletown, Ohio 45044 ("405 Cribbs") and a gray Honda Accord bearing the New Jersey registration number V76PGP ("the Honda Accord").

The Court held an oral hearing on the Motion to Suppress Evidence on October 18, 2023. Neither the Government nor Defendant presented witnesses or

introduced evidence at the hearing, proceeding only by way of oral argument. The Government submitted its Response in Opposition on October 6, 2023. Doc. #83.

I.     **Factual Background**

On September 1, 2022, Agent McGuire, a Deputy Sheriff of the Butler County Sheriff's Office and Narcotics Agent with the Butler County Undercover Regional Narcotics Task Force ("BURN"), applied for a search warrant for 405 Cribbs. Doc. #75-1. The warrant authorized law enforcement to search the residence for evidence of trafficking fentanyl and counterfeit fentanyl pills. *Id.* In the affidavit attached to the warrant, Agent McGuire attested to possessing over six years of experience as a law enforcement officer, recognizing how drug traffickers conceal and traffic narcotics, and having familiarity with how they store, hide, and deal contraband. *Id.*, PageID#197. This included noting that "[d]rug traffickers will use residences . . . to conceal drugs and monies associated from the sale of drugs." *Id.* The following information is also contained in said affidavit.

In July of 2022, Agent McGuire spoke with Task Force Officer ("TFO") Whitford with the DEA in Cincinnati, Ohio. *Id.* TFO Whitford told Agent McGuire that Medina-Feliz was the source of a large supply of fentanyl and counterfeit fentanyl pills, and Medina-Feliz resided in 405 Cribbs. *Id.*, PageID#198.

Between August 3 and August 5, 2022, BURN agents conducted surveillance and a controlled purchase at 405 Cribbs. *Id.* The agents relied on two Confidential Informants -- Golf Manor Confidential Informant ("CI#1") and Butler

County Confidential Informant 22-09 ("CI#2"), who were searched before entering 405 Cribbs and found to not possess contraband at that time. *Id.* Agents surveilled CI#2 as he or she, along with Medina-Feliz and two others, entered a parked vehicle outside the residence. *Id.* Upon returning to Agent McGuire and the BURN agents, CI#2 gave a small baggie containing ten pills; upon testing these pills, they were found to contain fentanyl. *Id.*

Meanwhile, CI#1 had several conversations in August, 2022, with Medina-Feliz about coordinating "a large shipment of fentanyl pills to be brought to the Butler County, Ohio area." *Id.* Specifically, on August 25, 2022, TFO Whitford relayed to Agent McGuire that Medina-Feliz told CI#1 "that a vehicle will be in the Butler County, Ohio area within the next few days[,]" and that this vehicle had "thirty thousand . . . fentanyl pressed counterfeit pills and one kilogram of fentanyl" concealed in the vehicle's gas tank. *Id.*

On September 1, 2022, Agent McGuire learned from TFO Whitford that the vehicle carrying this shipment of narcotics "arrived and is . . . in the projects of Middletown, Ohio." *Id.*, PageID#199. BURN agents, later that day, surveilled 405 Cribbs. *Id.* On several recorded phone calls with CI#2, Medina-Feliz told CI#2 "to come to his residence to see that the pills were in and to bring a quantity of money." *Id.* Medina-Feliz -- using the FaceTime feature on the Apple iPhone -- "showed a large amount of pills in a bag during one of the FaceTime calls." *Id.* He was wearing a white T-shirt during the call. *Id.* "The unknown courier who brought the narcotics to the Butler County Ohio area would also join in on the

3

conversation." *Id.* BURN Agents, thereafter, spotted "a Hispanic male wearing a white T-shirt exit the front door to 405 Cribbs . . . and get into and exit out of" the Honda Accord. *Id.*

The following portions of the search warrant affidavit reflect the crux of the issue before the Court. At the time preceding the presentation of the warrant to the magistrate, the Honda Accord was "still located at 405 Cribbs . . . ." *Id.* Thus, Agent McGuire swore that BURN agents, at that time of the warrant application and before it would be executed, "will conduct surveillance" of the Honda Accord "until it departs from the residence." *Id.* Then, a "marked police unit will conduct a traffic stop on this vehicle once probable cause has been established." *Id.* "In anticipation of locating fentanyl or pills or other drugs of abuse[,]" the search warrant states, "there will be probable cause to believe that [the] residence contains evidence" of drug trafficking. *Id.* Furthermore, the warrant states, "[s]hould the vehicle flee from law enforcement," Agent McGuire swore that "subjects commonly attempt to flee from law enforcement" to avoid arrest; thus, Agent McGuire concluded, "there will be probable cause to believe that [405 Cribbs] contains evidence as described." *Id.* In sum, the warrant stated that "[i]f a recovery of narcotics is made from the vehicle and/or the vehicle flees from law enforcement[,] a state search warrant will be executed at 405 Cribbs . . . ." *Id.* Nevertheless, Agent McGuire swore "that there is probable cause to believe that 405 Cribbs . . . contains evidence of drug trafficking and

4

possession of fentanyl or fentanyl pressed counterfeit pills," along with other items used to traffic narcotics. *Id.*

A magistrate judge in the Butler County, Ohio Common Pleas Court signed the search warrant for 405 Cribbs on September 7, 2022. *Id.*, PageID#196. Law enforcement executed the search warrant thereafter, discovering, *inter alia*, firearms and fentanyl inside. Nothing in the record reflects that, in executing the warrant, the police stopped the Honda Accord in a marked police unit or that Medina-Feliz or the driver of the Honda Accord fled law enforcement.

The police then obtained a search warrant for the Honda Accord, based on the sworn affidavit of Robert Dreske, a BURN Agent. Doc. #83-2. Because Medina-Feliz's sole challenge is that any evidence obtained from the Honda Accord must be suppressed based on the underlying deficiencies with the warrant for 405 Cribbs, then the Court's analysis turns only on the sufficiency of the warrant for 405 Cribbs. Doc. #75, PageID##192–94. Accordingly, the Court shall not elaborate on the facts contained in the search warrant for the Honda Accord, but it is noteworthy that law enforcement officers, upon searching the Honda Accord pursuant to this warrant, discovered pills containing fentanyl.

## II.   Analysis

Medina-Feliz's Motion to Suppress presents two challenges. First, he contends that Agent McGuire's affidavit for the search warrant lacked probable cause, because it contained statements that were "conditional on events happening that had not taken place at the time the affidavit was submitted" and

5

"never happened." *Id.*, PageID#193. Second, as noted above, he contends that the evidence discovered in the Honda Accord was unconstitutionally seized, because said evidence was fruit of the poisonous tree of the unconstitutional search of 405 Cribbs. *Id.*, PageID##193–94.

The Government argues, *inter alia*, that the search warrant was not anticipatory, *i.e.*, not conditioned on the basis of events that needed to occur to establish probable cause. Doc. #83, PageID##231–34. Moreover, the Government contends that, even if the Court reviews the search warrant absent the identified provisions that could be construed as anticipatory, the remaining provisions established probable cause to search 405 Cribbs (or, at the very least, fall under the good-faith exception). *Id.*, PageID##234–40. Finally, the Government notes that Defendant lacks standing to challenge the search of the Honda Accord, because he did not have a reasonable expectation of privacy in the vehicle. *Id.*, PageID#240.

At the oral hearing, the Court asked Defendant's counsel about the nature of his challenge to the search of the Honda Accord. Defense counsel admitted that, if the 405 Cribbs warrant were valid, Defendant did not have standing to challenge this search.

The Court turns first to Defendant's argument that the warrant failed to demonstrate probable cause.

6

### A. Sufficiency of the Search Warrant

Defendant's challenge to the sufficiency of the search warrant is premised on two arguments: (1) the warrant is an anticipatory search warrant; and (2) because the events necessary to trigger probable cause in said warrant did not yet occur, then there was not probable cause to issue the warrant. Doc. #75, PageID#193. Neither premise, however, proves correct.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The question for the magistrate issuing the warrant is "whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Traditional warrants issue upon a showing of probable cause. By contrast, an anticipatory warrant only becomes effective upon the happening of some future event -- a 'triggering condition' -- which establishes probable cause for the search." *United States v. Perkins*, 887 F.3d 272, 274 (6th Cir. 2018) (quoting *United States v. Grubbs*, 547 U.S. 90, 94 (2006)).

Defendant's first premise is flawed, because the search warrant was not made contingent on a "triggering condition" that had to occur before there was probable cause to search 405 Cribbs. As the Government notes, the Sixth Circuit in *United States v. Huntley*, 743 F. App'x 657 (6th Cir. 2018), clarified what

7

constitutes an anticipatory search warrant. Anticipatory warrants "*only* become[] effective upon the happening of some future event -- a triggering condition -- which establishes probable cause for the search." *Id.* at 660 (emphasis added) (internal quotation marks omitted) (quoting *Perkins*, 887 F.3d at 274). The Sixth Circuit thereafter noted that the search warrant at issue lacked "the typical language -- 'unless and until,' 'then and only then,' 'if and only if,' 'upon occurrence of,' etc. -- utilized to set forth a triggering condition." *Id.* Applying that logic here, the search warrant and affidavit did not contain any contingent language premising probable cause on the search of the vehicle in the relevant portions. Doc. #75-1, PageID##199–200. Rather, the better reading of these portions is that they reflect the BURN agents' plan of action: to attempt to stop the vehicle, uncover narcotics, and execute the search warrant to reveal further evidence of drug trafficking. *See id.*; *cf. United States v. Ventresca*, 380 U.S. 102, 108 (1965) ("[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.").

Indeed, the key details listed within the affidavit -- including, *inter alia*, the discussions with the CI, controlled buy, and information about the shipment of fentanyl to the residence -- already occurred before the warrant application was written, listed what law enforcement officers believed were present in 405 Cribbs at the time of execution, and were not dependent on the stop of the Honda Accord. *Id.*; *see Huntley*, 743 F. App'x at 660. Most notably, Agent McGuire concluded the affidavit by swearing that "there *is* probable cause to believe that

8

405 Cribbs . . . *contains* evidence of trafficking[,]" speaking "only to a finding of probable cause by the magistrate judge upon its issuance, not upon an event to occur in the future." *Huntley*, 743 F. App'x at 660. Accordingly, Defendant's argument that the warrant was an anticipatory warrant lacks merit.

Defendant's second premise fares no better. The Sixth Circuit has recognized that, even assuming *arguendo* that a portion of a search warrant is "anticipatory," a search pursuant to such a warrant that, independently, establishes probable cause without the anticipatory portions that have not yet occurred does not violate the Fourth Amendment. *See, e.g., Perkins*, 887 F.3d at 277 ("The government, however, has not presented any argument that its search was independently reasonable on this basis even if the warrant was invalid[.]"). To search a residence for evidence of contraband, "the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 2004)).

The search warrant and accompanying affidavit -- after excising the provisions discussing the BURN agents' plan to stop and search the Honda Accord -- established such a nexus to search for evidence located at 405 Cribbs based on several details: to wit, the controlled purchase just outside 405 Cribbs; the discussions about fentanyl between Medina-Feliz and CI#1 through August, 2022;

9

Agent McGuire's knowledge that drug dealers store contraband in their residences, along with the information that Medina-Feliz resided at 405 Cribbs; TFO Whitford's information on August 25, 2022, that a vehicle would arrive at 405 Cribbs with fentanyl; and the recorded calls between Medina-Feliz and the CI#2 on September 1, 2022, in which Medina-Feliz told the CI to come to 405 Cribbs and bring cash, and showed CI#2 a large bag of pills on FaceTime. Doc. #75-1, PageID#199; *see, e.g.*, *United States v. Jenkins*, 743 F. App'x 636, 643–44 (6th Cir. 2018) (finding that a nexus existed between the defendant's drug dealing and his residence, because he entered his residence, got in his car, sold drugs, and returned to the residence). The references to the vehicle arriving at 405 Cribbs do not make probable cause rise and fall on searching the vehicle and discovering narcotics. Instead, the aforementioned facts -- establishing a connection between the residence and drug trafficking -- demonstrate probable cause to search 405 Cribbs at the time the warrant was issued. *See* Doc. #75-1, PageID##199–200; *United States v. Vigneau*, 187 F.3d 70, 80 (1st Cir. 1999) (affirming denial of a motion to suppress where the information contained in the warrant, read without the anticipatory provisions, established probable cause to search the residence at the present moment). Therefore, the Court overrules Defendant's motion on this basis.[1]

---

[1] Even assuming *arguendo* that the search warrant and affidavit did not demonstrate probable cause to search 405 Cribbs, the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), would insulate the search therein. In *Leon*, the Supreme Court held that the purpose of the exclusionary rule is not served by suppressing evidence

10

### B. Fruit of the Poisonous Tree

As to his second argument, Defendant sought to challenge the search of the Honda Accord based only on the fruit of the poisonous tree doctrine, which "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) (quoting *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010)). Nevertheless, this challenge necessarily fails here, because the underlying

---

obtained pursuant to an officer's objectively reasonable reliance on a search warrant, otherwise issued by a neutral and detached magistrate judge, that was later found invalid. *Id.* at 917–22; *see Davis v. United States*, 564 U.S. 229, 238–39 (2011) (summarizing *Leon's* holding as "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid"). The exception does not apply where "the affidavit is 'so lacking in probable cause as to render official belief in its existence entirely unreasonable'" or "where the officer's reliance on the warrant was neither in good faith nor objectively reasonable." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 923); *cf. United States v. Davis*, --- F.4th ---, No. 22-3603, 2023 WL 6967567, at *4 (6th Cir. Oct. 23, 2023) (describing the limited instances where "officers might sometimes bear the blame for unlawful warrants"). But it applies where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched . . ., even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 596. This nexus existed here, because the recorded phone calls and discussions, information about the incoming shipment of fentanyl, and the verification of Medina-Feliz showing a large bag of pills to CI#2 via FaceTime constituted "details of drug-dealing activity related to" 405 Cribbs. *Jenkins*, 743 F. App'x at 645–46 (applying good-faith exception for the sake of argument where the search warrant affidavit showed how the defendant entered his car from his residence, sold heroin in two controlled buys from the car, and met with others in his car "in a manner consistent with drug sales" on other occasions). At the very least, the details included in the search warrant for 405 Cribbs clear this low threshold when compared to Sixth Circuit precedent. *See, e.g.*, *Carpenter*, 360 F.3d at 593 (applying the good-faith exception where the affidavit stated merely that aerial surveillance revealed a road connecting a home to a nearby marijuana field); *United States v. Washington*, 380 F.3d 236, 243 (6th Cir. 2004) (applying the good-faith exception to an affidavit supporting a search warrant for a residence where police observed a defendant complete several drug deals in a car registered to the residence for which the warrant was issued and that had been spotted at the residence immediately before a drug sale). The good-faith exception, therefore, would apply to prevent suppression of evidence discovered upon searching 405 Cribbs.

11

search warrant was not an anticipatory search warrant and contained probable cause to search 405 Cribbs. *Cf. United States v. Canipe*, 569 F.3d 597, 606 n.3 (6th Cir. 2009) (finding that the ruling affirming the denial of a motion to suppress as to the first issue mooted the fruit of the poisonous challenge as to a related issue). Accordingly, Defendant's challenge appears moot and shall be overruled.

### C. Standing

Defendant further acknowledged at the oral hearing that he lacked standing to challenge the search of the vehicle independently. "[T]he defendant bears the 'burden' of showing he has standing" to challenge an allegedly unconstitutional search or seizure. *United States v. Russell*, 26 F.4th 371, 375 (6th Cir. 2022) (quoting *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014)). This requires "a legitimate expectation of privacy" in the property searched or seized, meaning "when a person 'has exhibited an actual (subjective) expectation of privacy' and 'the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable.'" *United States v. Nelson*, 725 F.3d 615, 622 (6th Cir. 2013) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

As Defendant recognized at the hearing, he lacks standing to challenge the search of the Honda Accord. He does not have any proprietary interest in the car, nor has he demonstrated any expectation of privacy in a vehicle that he disclaims any interest in. *See, e.g., United States v. Elmore*, 304 F.3d 557, 561–63 (6th Cir. 2002) (a defendant lacked standing to challenge the search of a vehicle where no evidence in the record supported his claim of ownership and his subjective

12

expectation in having tinted windows to disguise the vehicle's contents was not one society recognized as reasonable). Thus, he has not met his burden necessary to challenge the search. See *Russell*, 26 F.4th at 375. Therefore, the Court overrules Defendant's attempt to suppress any evidence uncovered from the search of the Honda Accord.

### III.   Conclusion

For the reasons set forth above, the Court OVERRULES Defendant Mainer Medina-Feliz's Motion to Suppress Evidence, Doc. #75.

Date: October 26, 2023

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE